Ms. Edward? Yes, good morning your honors. My name is Carol Edward and I am here today to represent Mr. Jose-Chuc and his wife and they're also present in court. And I appreciate receiving the court's request to address the Munoz case. And I know that the court's familiar with the basic facts in this case. We have a 245-I issue which is the provision that provides for people to adjust status in the United States if they enter illegally. And it was extended and provided that if a person was physically present on the day that the law was enacted that they could then make this application to adjust status if they otherwise qualified and filed the required petition before the April 30, 2001 deadline. With that, there's some major, the major issues involved in this case really have to do with congressional intent. And the difference between 203-A and the 245-I really have to, they come back to the congressional intent. And I think you can also see how that plies in when you look at the 203-C analysis that was done in the Albino case. Because in this case, it was, in the 203-Nakara case, what happened was they, there was a lot of old lawsuits that had been out there, the ABC litigation. I'm sure this court is well familiar with the number of lawsuits that have been pending since the 80s. There was a number of asylum cases that people had been permitted to be here in the United States. And there was a huge backlog of asylum cases that hadn't been adjudicated. I believe there was hundreds of thousands of asylum cases that had just been sitting. I mean, I personally had a number of those cases from the early 1990s that never got interviewed until the 2000s. So there was a number of people who had been legally here in the United States permitted under color of law to be here. And the Congress decided that they were going to provide them a benefit in efforts to clean up a number of these cases and to afford these people a benefit to stay in the United States. So they did the Nakara. And they addressed it to specific people. And I said, we want, we are willing to cover these people who are here on this ABC litigation. We're here to cover these people who did this TPS application prior to an earlier date. We're here to allow people who are from former Eastern Bloc countries who no longer, who may have now have entirely different circumstances, but were permitted to be here on asylum cases, who had entered before December of 1990, to file these applications and to go through this process. So there was a specific class created. And it was defined by prior action. And it was, the congressional intent was to clean up and provide an opportunity for these people. With 245i, what they did was they said, there is a number of people, again, who are married to U.S. citizens or who are some way eligible for a benefit through an I-130 or in some cases employment cases. And we want to allow these people to process their applications in the United States. We don't want to force them to have to leave, especially given the issues that develop when people have to go back and counsel a process. And with a lot of these people who have entered illegally, that 245i cured, they would be subject to unlawful presence bars, have extreme hardship they have to establish. It could take months and months and literally years to get some of these people back. Counsel, was the 245i at issue in this case, was that an extension of a prior deadline? It was. Now, what was the prior deadline? So 1997, 1998? January 14th, 1998 was the prior deadline. I suppose Congress could have approached this in one of two ways. One would have been to provide that a timely filing would be one year from or two years from a fixed date, which is typically the way a statute of limitations is written. Or they could have provided, as they did here, a fixed date by which the application had to be filed. And normally those are construed to be statutes of repose when there's a firm deadline. Why shouldn't we look at it that way? Well, the reason, and that's obviously the major issue in this case. The problem is that with, if you look at that differentiation, it's not clear cut across the board. Because even the Lampf case that they refer to was one in which it said, you know, they found that it was a statute of repose. And they said that you have one year to discover this fraud. And then if, but it has to be filed within three years of a specific offering. They had a date, and it was set forth similar to what you're describing we might describe as a statute of limitations. In that case, they said it was a statute of repose. Which seems to be sort of an off-fortiori argument that when Congress gives us a hard date, that it has to be a statute of repose. Your analysis of Lampf would tend to call into question our decision in Albio. But it doesn't call into question our decision in Munoz. A lot of it has to do with, again, it's the congressional intent in doing this. When Congress passed this law, and if you look at the How can we measure the intent other than by the fact that Congress said, if you get your application in by January 30th, we will consider it? Well, the only thing that we have to look at beyond what the law specifically says is the congressional record. We have Kennedy's comments, and we have the joint memorandum that was issued, which was attached to my brief. And in this joint memorandum, it says that they want to encourage all potentially eligible people to apply. They want that, they ask that INS have regulations that encourage skeletal applications. They state that they want them to get out there and do a broad outreach program. None of that was put into the law. That's true. It's not part of the law. These look like suggestions. But in the Albino case, it's the same thing. The Attorney General was given some discretion there and was allowed to set a deadline. That's true. And that's quite different from this one, where Congress itself set the date. It's true on the date. But they also talk about the filing, and they talk about being liberal in an interpretation and what is an appropriate filing in this case. Well, that might give you some range in looking at what paper is complete or incomplete if it's filed before April 30th. The problem is that the paper here was not received at INS by April 30th. True. There's a side argument here about whether the check was there and whether everything was complete, but that seems to be irrelevant. INS didn't get it by April 30th, 2001. And I did do a thorough search of their record, and I could find nothing that would indicate that they did, in fact, receive it by that date. So I have to agree. I mean, I would love to be able to argue that they got it, but I can't, because there is absolutely no evidence of that. But the issue, again, and I realize that's what it's all about, but that is the main point on any statute of limitations, whether you call it a statute of repose or not, should there be equitable considerations applied to this. But we have held that if it's a statute of repose, that we do not have equitable tolling. And if it's a statute of limitations, then generally we do have the power to grant equitable tolling. So the way that we categorize this turns out to be really important is the difference between Albio and Munoz. And this case looks a whole lot more like Munoz than it does like Albio. It has a set date, but again, it's the congressional intent that's involved, because if you look at other statutes of repose, or you look at other statutes of limitations, there is some flexibility. They don't all just say this is it. And we are looking at a whole different area of law. This is immigration. We're not looking at a civil lawsuit where the government... It's really hard for this panel, because we're not capable of overruling ourselves in Munoz. And we have this decision in Munoz on NACARA that says when Congress sets a fixed deadline, it is a statute of repose and no equitable tolling is available. Do you have a mechanism by which this panel can distinguish Munoz? Well, again, the only way to distinguish Munoz, I believe, is to look at the congressional intent involved. It would be to look at Senator Kennedy's comments and this joint memorandum that was put into the congressional record. Yes. To look at it to see what was the purpose of the extension of this and what did they intend.  I mean, there was a deadline of April 30, 2001. There's no question about it. I can't contest that. It doesn't say, or if it was submitted some other way, or if the attorney screwed up, then we can allow some other way to obtain this. There's no... Do you want to save a little time for rebuttal? Yes. Okay. We'll give you a minute.  Mr. Holyoke? May it please the Court. My name is Dallin Riley Holyoke, trial attorney with the United States Department of Justice, and I represent the Attorney General responding in this matter. I would like to begin by directly addressing the concerns of the panel raised during Petitioner's argument and explain why 245I, like NACAR 203A, is a statute of oppose. First of all, as Petitioner has stated, the main crux of this whole issue is legislative intent. Petitioner provided no basis to distinguish Munoz from this case. Therefore, this panel could not decide contrary to Munoz and find that the statute 245I here is a statute of limitations and not a statute of oppose. And did Petitioner file for relief from Mexico? Yes, that's right. Because the Petitioner... Excuse me. Let me have a follow-up. Is there a time bar or anything like that that would apply? Yes. Because Petitioner has been present in the United States illegally for an extended amount of time, he would have to go to Mexico, concert process, and he would have to file a waiver. The waiver is DHS form 601-601. And at this time, there's no way we could represent how long that would take. Petitioner states possibly it could take 18 months. It could take longer. Okay. But there's not a regulatory or statutory one-year, five-year, that kind of thing. It has to do with how many of these are available and how long the line is. That's correct. But in terms of once that visa is obtained, then he is eligible for the relief he sought by virtue of his marriage, and I take it now as children. Right. He would have to concert process with a packet for he wouldn't be able to adjust. He would have to come over from Mexico with a visa. And he's already had his I-130 approved, so he's had the permission to apply for that visa, apply for entry back into the United States, but he would have to file it at 601, DHS 601. Counsel, the INS proceeded, started to process this application as though it had been filed before April 30th. Okay. The doctrine of, you know, estoppel or equitable tolling is one that can be court imposed. Does the INS or DHS, who got this now, have the discretion to admit Mr. Balanchuk, notwithstanding the lateness of his application? Is it within their discretion as a sort of matter of prosecutorial deference or discretion? That's an excellent question, and I can't answer it for this panel. That decision would have to be left to DHS, and I wouldn't be able to state whether or not they would be able to go ahead and process the adjustment. They've already given ---- Well, 245 is not asking whether they should or not. He's asking you whether the attorney general has that discretion, and you don't know the answer to that? I don't, because the board didn't speak to it in its decision, and I can only support what the board said. It's a general proposition and a general question, and a pretty important one, and you don't know the answer. Well, I can say that from the statute, 245I provides that you have to meet two requisites. You have to meet the date, and your application has to be approvable when filed. DHS and INS, when they processed all these applications, it's always a bifurcated process. They always go through the I-130, which is the initial request, a petition which is filed by somebody. In this example, Mr. Balanchuk's wife, they go ahead and they approve those. Many of these were approved. Many of these were approved which were filed after the date, because the I-130 is not linked directly to the adjustment. The adjustment's in I-485, and the I-485 is then processed either by DHS, if it's done through consular processing or some other method, or by EOIR, which is the immigration judges in the board. In this case, the second step couldn't go through, because in the statute with 245I, they have to have met the deadline. So DHS wouldn't process the adjustment. He ended up in removal proceedings, and then as he went through removal proceedings with EOIR, the board later said, we're not sure if we have jurisdiction, because we haven't addressed this issue before. This is a brand-new issue not only for this panel, but also for the agency, because the agency hasn't previously been presented whether or not it has jurisdiction to adjust somebody underneath 245I when they didn't meet the deadline. They do generally have adjustment power. Okay, so I'll follow up to Judge Hawkins, because I want to make sure I'm very clear on this. If there were a power of, let's say, sort of non-prosecution, okay, sort of one in which the agency would stay its hand, the agency that would have the power to do that would be DHS and not the Department of Justice, which would include BIA. Right. So the BIA doesn't have any power here. That power would, it's with Mr. Chertoff, not with Mr. Mukase, is that correct? That's correct. So that's part of the problem here is that once after 9-1-1 we separated INS from the Department of Justice and transferred over to DHS, you've got another agency involved here. That's right. And that point also, there's more than just this case. There are probably thousands upon hundreds of thousands of cases out there where people either missed the deadline, their attorneys messed up, something happened, so that they ended up in this glut of cases that happened afterwards. And this brings it all back to the main issue, which is congressional intent. Congress understood when it passed 245I that people would be left out. There's no doubt about that. We made that clear in our brief that they knew people would be left out, and not only just because of the filing date. As they stated, they were worried about scam artists. All of these issues were presented to Congress. Congress, regardless, set the date. There were questions after this date expired. I remember from when I was initially practicing that there was questions about whether or not they would again pass another 245I, and it never happened. There were other cases that were compelling. It still never happened. So what we're presented with in this case is a general immigration issue. It's a policy issue that's best left to the legislature. It wraps it all back up into the fact that 245I was set with a fixed deadline for political and other reasons, which we don't have the power to look at at this point. The board could only look at 245I, what it said in the statute, and the statute said it had to be filed by April 30, 2001. The application of the petition was not filed by April 30, 2001. What is the or would be the process whereby a person in petitioner circumstance could ask DHS for relief in this case? Well, the correct process and the correct remedy is to consult a process. If he can't consult a process, he would have to ask the district director for a deferral of removal. That's always up to the district director of DHS and can happen in a number. I mean, that's up to their discretion completely. I can ask Ms. Edwards this. Do you know whether they've complied with the Lozada ruling in terms of protesting their attorney's actions here? Yeah. Ms. Edwards, do you know the answer to that question? I'm sorry? Have you complied with Lozada? Yes. You filed a complaint with the state bar? Yes. It was included in the record. Okay. All right. We would dispute that because in the record, which is all we have before this Court, there is no evidence that that bar complaint was actually filed. We do have concerns whether or not that was crafted just for litigation purposes because it is actually fairly common to file a form that has never been submitted to – and there's no proof of mailing. There's no proof that the bar received it. Would that affect anything in your view if the mail Lozada filing? As far as this case, the Board stopped its analysis on whether or not the statute was one to propose. It didn't move on to the next step, which was whether or not it was equitable. So the answer is no. So the answer is no, and if that was the issue that this Court decided to hold, then it would have to be remanded to the Board. If the Court decides it's statute of limitations, then it would have to remand to the Board to then consider the next step, which is, is there an equitable action? The Lozada ruling really would only go to the question of whether it should be equitably told, assuming that equitable tolling was available. Correct. Your argument is equitable tolling isn't available, so the whole Lozada ruling is – Right. Or compliance with Lozada is irrelevant. That's absolutely correct. That's absolutely correct. Do you have any – is there any evidence that you're aware of that the Petitioner has any kind of criminal history? No, there's not, Your Honor. As far as you know, it's a clean record? That's as far as we know. All right. It's based on the record. Okay. I think we understand your argument. All right. Would the Court's permission may I conclude? Sure. The agency properly found Mr. Balanchuk's claim to be entirely without merit. You're going to read this to us? Yeah. Why don't you just stop right there? We understand you want us to deny relief and the reasons for it, and we'll hear a rebuttal argument at this time. Thank you. Thanks for coming in this morning. Thank you. Ms. Edward? Briefly. Again, the distinguishment between Munoz, there is a second one, and I do want to mention that again. One is the congressional intent, and the second one is the way the class was defined. In Munoz and Nicara, the class was specifically defined to include people that involved past behavior. In 245I, it involved a future deadline, which is somewhat different than the normal procedure, or at least it's a little bit different than the provision contained in that Munoz was interpreting in Nicara. It's another distinguishment for this Court. I realize it's difficult to make these, but I do believe that they are different cases. They involve different congressional intent and different entirely different purposes. And that is why the Munoz decision was appropriate and the other one was not. Have you asked on behalf of your client, of the district director of DHS, for deferral of removal? We have not. Do you intend to? You can't ask for it until every appeal has been exhausted. Well, that was my next question. Do you intend to? Well, we are considering our options at this point. It's possible, but it's unlikely to be granted because it's only in cases where someone has severe health issues that if they are removed, their life is threatened, that those are typically granted. So it's very, very unusual. So his next option would probably be to counsel process, and it involves a separation between him. His wife and kid for, you know, a long time, probably a year and a half, or if we don't get a waiver, it would be ten years because that's what the bar is. It's a ten-year bar. Okay. Thank you for your argument. Thank both sides for their argument. The case that's argued will be submitted for decision. We'll proceed to the last case on the argument calendar this morning, which is Lewis against the
judges: Nelson, Hawkins, Bybee